IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHERYL SANDERS, CECILE WHITE,       )
CHERYL ULRICH, MARTHA SURRATT,      )
SARAH WILLIAMS, KELLY VICK,         )
and CHRISTIANS FOR A BETTER         )
COMMUNITY, INC. on their own        )
behalf and on behalf of all         )
others similarly situated,          )
                                    )
            Plaintiffs,             )
                                    )
    v.                              )  Civil Action No. 88-1261
                                    )
THE UNITED STATES DEPARTMENT        )
OF HOUSING AND URBAN DEVELOPMENT,   )
and ITS SECRETARY, THE ALLEGHENY    )
COUNTY HOUSING AUTHORITY AND        )
ITS EXECUTIVE DIRECTOR, THE         )
REDEVELOPMENT AUTHORITY OF          )
ALLEGHENY COUNTY and ITS EXECUTIVE  )
DIRECTOR, and the COUNTY OF         )
ALLEGHENY, PENNSYLVANIA,            )
                                    )
            Defendants.             )

O P I N I O N

DIAMOND, D.J.

Presently before the court is a petition for an award of attorneys' fees and expenses (Document No. 631) and a revised fee petition (Document No. 646) filed by the plaintiff class seeking attorneys' fees and costs incurred during the period from January 1, 1999, through February 17, 2005, for work undertaken to implement and enforce the Consent Decree entered between the parties on December 12, 1994.

For the reasons set forth below, the petition will be granted in part and denied in part. Specifically, after making adjustments to plaintiffs' requested hourly rates and reducing the specific number of hours claimed, the court will approve attorneys' fees of $501,505.05 and costs of $2,776.47 for a total award of $504,281.52 for the requested period. Pursuant to the court's ruling on proportionality, HUD would be responsible for 65% of the fees and costs, $327,782.98, and ACHA would be responsible for 35%, $176,498.54. However, in order to avoid a windfall to plaintiffs, who will receive $194,000 from ACHA in a settlement arrived at by those parties, the court will deduct $17,501.46, the excess of the settlement amount and the 35% liability amount, from HUD's portion, thus HUD will be responsible for only $310,281.52 of the total award.

The parties are intimately familiar with the factual and procedural background of this case and the court, in its opinion dated March 14, 2001 (Document No. 511), exhaustively set forth that background through that date. Accordingly, the facts and procedural history of this case will not be recounted in detail here other than briefly to place the pending request in context.

Plaintiffs commenced this class action[1] in 1988 against the

---

1 A plaintiff class subsequently was certified consisting of "all black current residents in, or applicants for, public housing assisted by the ACHA and/or HUD, who have been and continue to be denied decent, affordable, and racially integrated public housing opportunities." See Opinion and Order, October 15, 1992, Document No. 187.

AO 72A
(Rev.8/82)

United States Department of Housing and Urban Development ("HUD"), the Allegheny County Housing Authority ("ACHA"), the County of Allegheny ("the County"), and the Redevelopment Authority of Allegheny County ("RAAC"), seeking redress for alleged de jure racial segregation in public and other federal assisted housing in Allegheny County and for the alleged perpetuation of and failure to remediate that segregation in violation of the United States Constitution and specific federal statutes cited in the complaint.

After years of pretrial preparation, the parties drafted "a settlement agreement designed to desegregate the ACHA's housing programs and provide class members decent, affordable, and racially integrated public housing opportunities." Sanders, et al. v. United States Department of Housing and Urban Redevelopment, et al., 872 F.Supp. 216, 218 (W.D.Pa. 1994). A desegregation plan for Allegheny County developed by a committee of experts served as a blueprint for a negotiated settlement agreement, which the parties presented to the court for its approval as a consent decree ("the Decree").

On December 12, 1994, this court granted a motion to approve the Decree as a fair and adequate resolution of the litigation, and the Decree was entered as an order of this court. Id. at 217. The Decree enjoined each defendant "to implement [it] and take all actions necessary to fulfill its obligations." Id. at 220.

On March 14, 2001, this court issued a comprehensive

- 3 -

opinion granting in part and denying in part plaintiff's counsel's motion for attorneys' fees incurred during the period from January 1995 to December 1998. As modified by this court's order dated April 23, 2001, (Document No. 517), a total interim attorneys' fees and costs award of $551,334.42 was entered in plaintiffs' favor.

During the intervening years, disputes among the parties regarding the Decree periodically arose, some of which required court intervention. Finally, on December 23, 2004, after numerous conferences and lengthy negotiations, the parties filed a joint stipulation indicating that they had reached a settlement agreement which would end the Decree. Class members were given notice of the proposed settlement agreement and an opportunity to be heard at a hearing which was held before the court on January 28, 2005. With no objections, this court entered an order dated January 28, 2005, terminating the Decree. (Document No. 627).

On February 18, 2005, plaintiffs' filed the pending petition for attorneys' fees and costs for the period from January 1, 1999, to February 17, 2005. Responses in opposition to the petition were filed by both HUD (Document No. 637) and ACHA (Document No. 638),[2] and plaintiffs filed a response to HUD

---

2 RAAC and the County filed a joint statement in response to plaintiffs' petition (Document No. 635) noting that HUD had agreed to indemnify, defend and hold the County harmless for any and all fees and costs awarded by the Court. The statement also noted that RAAC had only limited obligations under the consent decree and that plaintiffs had not alleged that RAAC

- 4 -

and ACHA's oppositions (Document No. 639) in which certain adjustments were made to the fee request.

Subsequently, plaintiffs and ACHA entered into a settlement agreement and release whereby ACHA agreed to pay $194,000 in attorney's fees and costs. By order dated August 29, 2005, plaintiffs' petition was withdrawn as to ACHA only. (Document No. 645). On September 6, 2005, plaintiffs filed a revised fee petition in light of the settlement agreement with ACHA. Plaintiffs' petition now is ripe for resolution.

At the outset, the court notes that the parties have been instructed that the court considers its findings and conclusions as set forth in its March 14, 2001, opinion and order, as modified by its April 23, 2001, order, granting in part and denying in part plaintiffs' petition for an interim award of attorneys' fees, to be the settled law of the case. The parties have been informed that, in the absence of any justification for doing so, the Court will not revisit its legal conclusions from that opinion and intends to apply those conclusions to plaintiffs' pending petition for a final award of fees. The court therefore will analyze the pending petition in light of the law as it found it to be in its March 2001 opinion.

Class counsel's pending request seeks an award of fees and

breached those obligations nor that plaintiffs had expended any time monitoring RAAC's activities in regard to those obligations, and, therefore, RAAC has no responsibility or liability for any awarded fees or costs.

- 5 -

expenses for work undertaken to implement and enforce the Decree from January 1, 1999 to February 17, 2005. The initial petition requested a total fees award of $762,793.62, as well as expenses in the amount of $2,776.47. This requested amount later was modified in plaintiffs' response to HUD's partial opposition to plaintiffs' petition and again in plaintiffs' revised fee petition filed after plaintiffs reached a settlement agreement on fees with ACHA. After these revisions, class counsel now seeks a total fees award against HUD of $467,315.04 as well as expenses of $1,804.71.

HUD has raised numerous objections to plaintiffs' requested fees award in regard to the reasonableness of both the hourly rate requested as well as the total number of requested hours. HUD's position is that it is only responsible for a total of $145,982.22 in fees and that it is not responsible for any expenses.

Upon due consideration of plaintiffs' petitions and HUD's objections, as well as the court's March 2001 opinion, the court believes that certain adjustments are necessary both as to the requested hourly rate and the number of hours, however, not to the extent suggested by HUD. In the end, the court finds that class counsel is entitled to a total of $504,281.52 in fees and costs, a figure the court arrived at by applying the below analysis guided by the standards set forth in its March 2001 opinion.

Class counsel's petition is brought pursuant to 42 U.S.C.

- 6 -

AO 72A
(Rev.8/82)

§1988, which permits a court, in its discretion, to award reasonable attorney's fees in any action or proceeding to enforce a provision of the federal civil rights laws. By providing for the recovery of reasonable attorneys' fees, §1988 is designed "to ensure effective access to the judicial process for persons with civil rights claims and to encourage litigation to enforce the provisions of the civil rights acts and constitutional civil rights provisions." Hernandez v. Kalinowski, 146 F.3d 196, 199 (3d Cir. 1998).

In light of the Congressional purposes and policies underlying §1988 and related fee-shifting statutes, prevailing parties seeking to enforce civil rights are entitled to recover attorneys' fees "unless special circumstances would render such an award unjust." Staten v. Housing Authority of City of Pittsburgh, 638 F.2d 599, 604 (3d Cir. 1980) (emphasis in original; citations omitted). Thus, where the request is made by a prevailing plaintiff, the district court's discretion in assessing the propriety of the award "is quite narrow" and "[a] strong showing of special circumstances is necessary to support a denial of attorneys' fees." J&J Anderson, Inc. v. Town of Erie, 767 F.2d 1469, 1474 (10th Cir. 1985).

However, it likewise is important to remember that fee-shifting statutes "were not designed as a form of economic relief to improve the financial lot of attorneys nor were they intended to replicate exactly the fee an attorney could earn through a private fee arrangement with his client."

- 7 -

Pennsylvania v. Delaware Valley Citizens Council for Clean Air,
478 U.S. 546, 565 (1986).

The starting point in determining a reasonable fee is to
multiply the reasonable hourly rate for the services rendered
times the number of hours reasonably expended on the services
in question. Washington v. Philadelphia County Court of Common
Pleas, 89 F.3d 1031, 1035 (3d Cir. 1996) (citing Hensley v.
Eckerhart, 461 U.S. 424, 433 (1983)). A court may then consider
adjustments to the "lodestar" fee thus produced if the results
obtained are not reasonable. Rode v. Dellarciprete, 892 F.2d
1177, 1183 (3d Cir. 1990). There is, however, a strong
presumption that the resulting lodestar yields a reasonable fee.
Washington, 89 F.3d at 1035 (citing City of Burlington v. Dague,
505 U.S. 557 (1992)).

### Reasonable Hourly Rate

The first step in awarding attorneys' fees is to assess a
reasonable hourly rate. In the March 2001 opinion controlling
the pending fee request, the court set forth the standards
governing the determination of a reasonable hourly rate and,
applying those standards, the court found a reasonable hourly
rate for monitoring/enforcement services to be $160 and a
reasonable hourly rate for administrative/implementation
services to be $120. The court determined that those rates were
"'adequate to attract competent counsel but [would] not produce
windfalls to attorneys.'" Public Interest Group of N.J., Inc.
v. Windall, 51 F.3d 1179, 1185 (3d Cir. 1995) (quoting Student

- 8 -

Public Interest Research Group of New Jersey, Inc. v. AT&T Bell
Lab., 842 F.2d 1436, 1448 (3d Cir. 1988)).

In the pending petition, class counsel asks the court to
use the $160 and $120 figures as a base but to increase those
rates by 34.66%, which is the increase in the Consumer Price
Index-All Urban Consumers for legal services between January
1999 and December 2004.    With this increase, plaintiffs seek
to be awarded fees at an hourly rate of $215.45 for
monitoring/enforcement services and at an hourly rate of
$161.59 for administrative/implementation services without
regard to the year in which the services were rendered.

HUD opposes plaintiffs requested hourly rate on several
grounds.    First, HUD contends that plaintiffs are limited by
the Equal Access to Justice Act ("EAJA") to a cap of $75 per
hour adjusted by the Consumer Price Index-ALL index, and,
second, that cost-of-living increases to that cap must be
computed at "historic rates" (on a year by year basis) so that
plaintiffs are not paid in 2004 dollars for work done as much
as five or six years previously. Accordingly, HUD proposes that
plaintiffs be compensated at an hourly rate of $133.78 for 1999
work, with yearly increases topping out at an hourly rate of
$154.01 for work done in 2005.

HUD's first contention, that this case is governed by caps
imposed by the EAJA, is without merit.    First, contrary to
HUD's assertions, the pending fee request, like plaintiffs'
prior request for interim fees, has been made pursuant to §1988,

not the EAJA.    Although it is true that the court referenced

the EAJA in its March 2001 opinion, it did so not to analyze the

fee request under EAJA standards, but instead to serve as a

benchmark to compare the reasonableness of the hourly rate that

the court computed under the standards of §1988.

Moreover, HUD has advanced no justification for this court

to revisit its formula for assessing a reasonable hourly rate

as enunciated in the March 2001 opinion, and, as the court has

admonished the parties, that opinion serves as the settled law

of the case.    Accordingly, HUD's contention that the EAJA caps

the hourly rate to be applied under the pending petition is not

well taken.

However, the court does believe that there is merit to

HUD's contention that plaintiffs should not be paid at 2004

rates for all hours expended from 1999-2005 as requested by

class counsel.    To the contrary, to award class counsel fees

at 2004 rates for work done years earlier not only would result

in a windfall in violation of the statutory purposes underlying

§1988, but also would reward them for needlessly complicating

the fee fixing process by delaying their application for fees

and costs for years after the work was done and they became

entitled to such an award.   See also fn 3, infra.

If a defendant raises a sufficient question as to the

reasonable hourly rate, the court has discretion in determining

a reasonable rate for the services rendered.   See Rode, 892 F.2d

at 1183.   Here, defendant has raised a sufficient question as

- 10 -

to the reasonableness of the requested hourly rate, and,
therefore, the task again falls upon the court to ascertain an
hourly rate for work done between 1999 and 2004 which would be
adequate to attract competent counsel but would not result in
a windfall to class counsel.

The task before the court now aptly was outlined in the
court's prior March 2001 opinion and bears repeating here:

> [I]t does not appear to the court that the
> purpose of §1988 would be served by
> permitting class counsel to maneuver
> themselves into prominent and time-
> consuming roles in long-term and extensive
> implementation processes and receive
> compensation therefor at hourly rates which
> are designed to attract competent counsel
> to assume the contingent risk of
> establishing liability in the most
> prominent civil rights cases. The court
> thus is required to consider all of the
> unusual circumstances presented and
> determine an hourly rate for each category
> of services rendered which is both
> reasonable and takes into account these
> countervailing considerations, a task which
> is less than precise and arguably involves
> a form of line-drawing . . . .

Opinion, March 14, 2001 at 53-54 (citation omitted).

With these concepts in mind, the court will proceed to
ascertain a reasonable hourly rate for the work performed during
the years 1999-2005 using the $160 and $120 hourly rates for
monitoring/enforcement work and administrative/implementation
work, respectively, as calculated in the March 2001 opinion as
a base.

Utilizing the United States Department of Labor Bureau of
Labor Statistics Consumer Price Index tables for legal services,

AO 72A
(Rev.8/82)

which plaintiffs' submitted as Exhibit 4 to their Appendix to Petition for an Award of Attorney's Fees and Expenses (Document 632), the court has calculated the rate for cost-of-living increases for each year from 1999 to 2004 by applying the increase at the end of each ensuing year starting with December 30, 1998. The court's calculations follow:

| December 30 | | December 30 | | % Gain |
|---|---|---|---|---|
| 1998 | $174.60 | 1999 | $183.50 | 1.051 |
| 1999 | $183.50 | 2000 | $192.60 | 1.050 |
| 2000 | $192.60 | 2001 | $205.10 | 1.065 |
| 2001 | $205.10 | 2002 | $213.90 | 1.043 |
| 2002 | $213.90 | 2003 | $224.60 | 1.050 |
| 2003 | $224.60 | 2004 | $236.60 | 1.053 |

The court then calculated the reasonable hourly rate for each year by increasing the base rates of $160 and $120 by the % cost of living gain for each year as follows:

Monitoring/Enforcement

| 1999 | $160 X 1.051 | $168.16 |
|---|---|---|
| 2000 | $168.16 X 1.050 | $176.57 |
| 2001 | $176.57 X 1.065 | $188.04 |
| 2002 | $188.04 X 1.043 | $196.13 |
| 2003 | $196.13 X 1.050 | $205.94 |
| 2004 | $205.94 X 1.053 | $216.85 |

Administrative/Implementation

| 1999 | $126.12 X 1.051 | $126.12 |
|---|---|---|
| 2000 | $132.43 X 1.050 | $132.43 |
| 2001 | $141.03 X 1.065 | $141.03 |
| 2002 | $147.10 X 1.043 | $147.10 |
| 2003 | $154.45 X 1.050 | $154.45 |
| 2004 | $162.64 X 1.053 | $162.64 |

Utilizing the above as reasonable hourly rates, the court established plaintiffs' fee for a particular year by multiplying the total hours reasonably expended during that year by the above rate for that year and adding the totals.

The court believes that the above rates satisfy the

purposes of §1988 by providing rates that will attract competent counsel while not providing them an unfair windfall at taxpayers' expense. The court is satisfied that this is a fairer method of arriving at an appropriate hourly rate than plaintiffs' counsel's request that they be compensated for 1999 work at 2004 rates.

For example, had plaintiffs' sought fees at the end of 1999 for the hours expended during that calendar year, their hourly rates under the court's formula for that year would have been $168.16 and $126.12 respectively. However, plaintiffs chose to wait until 2005 to seek payment for work done in 1999 and sought payment for that work in 2004 dollars, i.e., at the rate of $215.45 per hour for enforcement/monitoring work. If the court were to adopt plaintiffs' position, they would obtain an increase of $47.29 per hour in legal fees for 1999by the simple expedient of delaying their application therefor. That in no way can be justified or deemed reasonable.

Moreover, plaintiffs' counsel concede at page 11 of their response brief that they are not seeking and that they are not entitled to interest. However, the effect of paying them in 2004 dollars for services provided in earlier years would amount to the same thing.[3] The court believes that plaintiffs should

---

3 The court does not believe that Garcia v. Schweiker, 829 F.2d 396, 402-03 (3rd Cir. 1987), cited by plaintiffs, controls here. Based on the facts in that case, the circuit ruled that it was improper to calculate on a yearly basis the cost of living increase. However, that case is distinguishable because the plaintiff in that case did not become entitled to fees until the

not profit from their six year delay in filing their fee request. The formula utilized by the court ensures that while they will receive a reasonable hourly rate for their services, they will not receive a windfall.

## Number of Hours Reasonably Expended

The second component of a reasonable attorneys' fee is "the number of hours reasonably expended on the litigation." Hensley, 461 U.S. at 433. The standards governing an analysis of what constitutes reasonable are set forth in detail in the court's prior opinion, and those standards guide the court's analysis of the pending fee petition. Opinion, March 14, 2001 at 61-64.

Briefly, billing judgment, as used in the private sector, is an important component in assessing time under a fee-shifting statute. Hensley, 461 U.S. at 434. "Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." Id. (emphasis in original; citation omitted). It follows that the number of hours claimed can be reduced for a variety of reasons, including inadequate documentation, the reasonableness of the time expended on a particular task, and duplication of effort. See Ursic v. Bethlehem Mines, 729 F.2d 670, 677 (3d Cir. 1983); Rode, 892 F.2d at 1183 ("Hours are not reasonably expended if

case was over and thereupon was declared the prevailing party. Conversely, here, plaintiffs were entitled to recover fees as the case went along, and it was plaintiffs who chose to wait, thereby unjustifiably increasing their fee rate.

they are excessive, redundant, or otherwise unnecessary.")
(citing Hensley, 461 U.S. at 433).

     The court has reviewed the various time records submitted
and some of the HUD's objections appear to be well taken.   In
light of these facts and the well-established principle that the
court is to "greet a claim that several lawyers were required
to perform a single set of tasks with healthy skepticism,"
Lipsett v. Blanco, 975 F.2d 934, 938 (1st Cir. 1992), the court
will review all entries carefully in order to eliminate
unnecessary overstaffing, duplication and excessiveness.  With
regard to the number of hours claimed for such activities, the
court will follow the approach it adopted in its March 2001
opinion and employ "the arbitrary but essentially fair approach
of simply deducting a small percentage of the total hours to
eliminate duplication of services."   Northcross v. Board of
Education of Memphis City Schools, 611 F.2d 624, 637 (6th Cir.
1979) cert. denied 447 U.S. 911 (1980).

     A review of the reductions made to each attorney's time
sheets under these principles is set forth below.  The specific
details of the court's comprehensive calculations for each of
the six years under review is set forth at the end of this
opinion.

A.   Donald Driscoll

     Donald Driscoll is lead counsel for plaintiffs in this
case.  He has represented the plaintiff class throughout the
litigation and has practiced law since 1975.       Attorney

Case 2:88-cv-01261-GD   Document 648   Filed 09/30/05   Page 16 of 26

Driscoll seeks fees for 1053.6 hours of monitoring/enforcement work and 2592.6 hours of administrative/implementation work from 1999-2005.

HUD argues that attorney Driscoll is entitled to fees for only 1424.93 hours and does not attempt to break those down between monitoring/enforcement and administrative/implementation work. HUD arrived at its figure by making the following deductions to the number of hours requested: (1) work on monitoring/enforcement activities not directly involving HUD or the County; (2) 20% reduction for excessiveness and duplication; (3) 20% reduction for Task Force work between 2001 and April 2003; and, (4) full deduction for all Task Force work after May 1, 2003.[4]   Upon review, the court believes that many of these deductions are not warranted.

First, the court does not believe that full deductions of all hours relating to activities not directly involving HUD or the County are warranted.   As noted in our prior opinion, and as the Decree makes clear, "HUD is primarily responsible for the violations of law which led to the litigation and the Decree" and "the Decree and other law provide HUD with substantial oversight responsibilities over the other defendants and the greatest degree of responsibility in implementing the Decree."

---

4    HUD's opposition also sought deductions for work on fees issues for which fees were settled by agreement in 2001 and for work on unsuccessful actions against HUD and the County.   In their response to HUD's opposition, plaintiffs recognized the appropriateness of these deductions and modified their claim accordingly.

AO 72A
(Rev.8/82)

- 16 -

Opinion, March 14, 2001 at 84. Thus, merely because an action did not directly involve HUD does not negate HUD's overall responsibility for enforcement of the Decree.

Likewise, the court finds no basis to deduct all hours spent on Task Force activities after May 1, 2003. HUD contends that such a deduction is warranted because after the April 2003 adoption of the final plan, no further work on the Task Force was necessary. However, as plaintiffs point out in their response, Task Force responsibilities and activities continued after that April 2003, and, in fact, numerous Task Force meetings took place after that date in which both counsel for plaintiffs and defendants participated. Accordingly, HUD's contention that all time spent on such activities after April 2003 should be deducted is without merit.

However, the court does believe that some reduction in time is necessary to all of attorney Driscoll's hours based on excessiveness and duplication of services between counsel. As the court noted in its March 2001 opinion, a reasonable amount of consultation among co-counsel regarding the multifaceted components of the Decree certainly had to have been expected under the settlement agreement which HUD presented to the court. However, the court does believe that the overall hours submitted by counsel is to some extent duplicative and overall is excessive. Thus the court will reduce all requested hours by 20% in order to account for excessiveness and duplication of services.

- 17 -

Otherwise, the remaining hours submitted by attorney Driscoll were useful and necessary to secure the relief flowing from the court's order, and the court therefore will approve those hours subject to the percentage reductions noted above. Accordingly, the court will award for attorney Driscoll's services 842.88 monitoring/enforcement hours and 2074.08 administrative/implementation hours at the year-by-year hourly rates set forth above.[5]

B. Thomas Henderson

Thomas Henderson is an attorney with the Lawyers' Committee for Civil Rights Under Law and has practiced law since 1977. Attorney Henderson seeks fees for 16.71 hours of primarily supervisory work that he performed on this case between 1999 and 2004. HUD argues that attorney Henderson is entitled to, at

_____

5 For the period between 1999 and 2005 attorney Driscoll claims 1053.6 hours for his monitoring/enforcement activities and 2592.6 hours for his administrative/implementation activities, for a total of 3646.2 hours claimed. Thus, 29% of the total hours claimed by attorney Driscoll is for monitoring/enforcement and 71% for administrative/implementation. Attorney Driscoll did not break down these hours on an annual basis. The court has done this from the invoices attorney Driscoll submitted and in the process reduced the hours by 20% and allocated 29% of each yearly total hours to monitoring/enforcement and 71% to administrative/implementation. In light of the court's finding that a different rate is applicable for each year, after reducing the total hours by 20%, the court will break down the yearly requested hours by the same percentage of overall hours, i.e., for each year, the court will assume 29% of hours were spent on monitoring/enforcement activities and 71% of hours were spent on administrative/implementation activities. A similar breakdown by percentage is made to the hours of attorney Nepvue, who spent 19% of her overall requested time on monitoring/enforcement activities and 81% on administrative/implementation activities.

most, fees for 7.46 hours of work in 1999, as all other hours were spent on activities not actively involving HUD or the County.

For the same reasons outlined above for attorney Driscoll, the court again will reduce the number of hours requested by 20% to account for duplication, excessiveness and overstaffing. Accordingly, the court will award fees for 13.41 hours for attorney Henderson's work.

C. Julie Nepvue

Julie Nepvue was a Staff Attorney at the Lawyers' Committee for Civil Rights Under Law until November 2002 and has practiced law since 1991. Attorney Nepvue seeks fees for 52.55 hours of monitoring/enforcement work and 223.84 hours of administrative/implementation work performed between 1999 and 2002. HUD argues that Nepvue's request should be reduced by 20% for duplication of services and for work on activities not directly involving HUD or the County.

Under the same rationale as applicable to attorney Driscoll's request, the court will reduce the requested hours by 20% and will award fees for 42.04 hours of monitoring/enforcement work and 179.07 hours of administrative/implementation work.

D. Matthew Clash-Drexler

Matthew Clash-Drexler was a Staff Attorney at the Lawyers' Committee of Civil Rights Under Law from November 2001 until April 2002 and has practiced law since 2000. Attorney Clash-

- 19 -

Drexler requests fees for 67.98 hours of work done in this case in 2001 (25.41 hours) and 2002 (42.57 hours). HUD opposes any fees for work done by attorney Clash-Drexler because it was all for work on activities not directly involving HUD or the County.

Applying the overall 20% reduction for excessiveness and duplication, the court will award fees for 54.39 hours of work performed by attorney Clash-Drexler.

E.    Jonathon Hooks

Jonathon Hooks is a Staff Attorney with the Lawyers' Committee for Civil Rights Under Law who has practiced law since 1999.    Attorney Hooks requests fees for 34 hours of work done in 2003 (5 hours) and 2004 (29 hours).    HUD opposes any fees for work performed by attorney Hooks because it involved work on activities in which HUD or the County were not directly involved.

Applying the overall 20% reduction for excessiveness and duplication, the court will award fees for 27.2 hours of work performed by attorney Hooks.

## Expenses

Class counsel's revised fee petition seeks to recover $1,804.71 in expenses from HUD, which constitutes 65% of the requested $2,776.47 as stated in plaintiffs' initial petition. A breakdown of the requested expenses is included as Exhibit B-F to Tab 5 of the appendix to the initial petition.

HUD contends that plaintiffs are not entitled to any expenses, alleging that there is no evidence that plaintiffs'

- 20 -

expenses for Lawyers' Committee work were "reasonably necessary for its representation of plaintiffs in this case."

The court has reviewed the requested expenses in light of the law as set forth in the March 2001 opinion and finds no basis to reject plaintiffs' requested expenses. As stated in that opinion:

> The plaintiff class has a right to use lawyers which possess the requisite skill, expertise and resources necessary to protect their interests competently. The Lawyers Committee has intimate familiarity with the context giving rise to Decree, its provisions and the specialized areas of law which affect its implementation. Under such circumstances the court is obligated to award the reasonable expenses which would be paid by regular fee-paying clients for the use of its services.

Expenses and out-of-pocket costs which are distinct from litigation expenses, such as photocopying costs, telephone calls, travel and postage, are recoverable as part of a reasonable attorney's fee under §1988. Abrams v. Lightolier, Inc., 50 F.3d 1204, 1225 (3d Cir. 1995) (citing in support Missouri v. Jenkins by Agei, 491 U.S. 274 (1989)). Here, all of the expenses requested are for costs which properly are recoverable under §1988.

Accordingly, the court will award the expenses as requested.

## Proportional Responsibility

"It is a well-established principle that when multiple defendants are held to be liable in a civil rights action, the

- 21 -

proper course of action for a district court is to allocate responsibility for the payment of fees among the responsible parties." Coleman v. Kaye, 87 F.3d at 1510 (citing Vargas v. Hudson County Bd. Of Elections, 949 F.2d 665, 677 (3d Cir. 1991)). Where possible each defendant is to "bear the prevailing plaintiff's fees for time spent on matters clearly related to the claims made against that defendant." Id. (citation omitted).

In the March 14, 2001, opinion, the court found that the record supported joint and several liability against HUD for the entire award. Because the pre- and post-Decree record also adequately supported the ACHA's secondary responsibility for liability, the court also found that joint and several liability against the ACHA for 35% of the award also is warranted. Except as noted below, the County and the RAAC's proportionate shares are included in the percentage assigned to HUD in light of the stipulation between HUD and the County and the nominal role of the RAAC throughout this litigation. This finding in regard to proportionality remains the law of the case.

Accordingly, the court will find HUD responsible for 65% of the overall fees award. However, as already noted, in order to prevent a windfall to plaintiffs' counsel, the court has taken into account the $194,000 that plaintiffs' will receive from ACHA as part of their fees settlement.

For the reasons noted above, the plaintiff class' petition for an award of attorneys' fees and expenses against HUD will

be granted in part and denied in part. The total requested amount of $697,028.71 will be adjusted as reflected in the calculations which follow:

## 1999

### DONALD DRISCOLL

| | | |
|---|---|---|
| Enforcement | 189.23 (29% of 652.5) - 20% (37.85) = 151.38 @ $168.16 | = $25,456.06 |
| Admin. | 463.27 (71% of 652.5)- 20% (92.65) = 370.62 @ $126.12 | = $46,742.59 |

### THOMAS HENDERSON

| | | |
|---|---|---|
| Enforcement | 9.26 - 20% (1.85) = 7.41 @ $168.16 | = $ 1,246.07 |

### JULIE NEPVUE

| | | |
|---|---|---|
| Enforcement | 9.98 (19% of 52.55)- 20% (1.99) = 7.99 @ $ 168.16 | = $ 1,343.60 |
| Admin. | 42.57 (81% of 52.55)- 20% (8.51) = 34.06 @ $126.12 | = $ 4,295.65 |

**YEARLY SUBTOTAL**     **$79,083.97**

## 2000

### DONALD DRISCOLL

| | | |
|---|---|---|
| Enforcement | 228.87 (29% of 789.2) - 20% (45.77) = 183.1 @ $176.57 | = $32,329.97 |
| Admin. | 560.33 (71% of 789.2) - 20% (112.07) = 448.26 @ $132.43 | = $59,363.07 |

### THOMAS HENDERSON

| | | |
|---|---|---|
| Enforcement | 1.3 - 20% (.26) = 1.04 @ $176.57 | = $ 183.63 |

### JULIE NEPVEU

| | | |
|---|---|---|
| Enforcement | .59 (19% of 3.1) - 20% (.12) = .47 @ $176.57 | = $ 82.99 |
| Admin. | 2.51 (81% of 3.1) - 20% (.5) = 2.01 @ $132.43 | = $ 266.18 |

**YEARLY SUBTOTAL**     **$92,225.84**

## 2001

### DONALD DRISCOLL

| | | |
|---|---|---|
| Enforcement | 174.9 (29% of 603.1) - 20% (34.98) = 139.92 @ $188.04 | = $26,310.56 |
| Admin. | 428.2 (71% of 603.1) - 20% (85.64) = 342.56 @ $141.03 | = $48,311.24 |

### THOMAS HENDERSON

| | | |
|---|---|---|
| Enforcement | 2.45 - 20% (.49) = 1.20 @ $188.04 | = $ 225.65 |

### JULIE NEPVUE

| | | |
|---|---|---|
| Enforcement | 2.19 (19% of 11.5) - 20% (.44) = 1.72 @ $188.04 | = $ 323.43 |
| Admin. | 9.31 (81% of 11.5) - 20% (1.86) = 7.45 @ $141.03 | = $ 1,050.67 |

### MATTHEW CLASH-DREXLER

| | | |
|---|---|---|
| Enforcement | 25.41 - 20% (5.08) = 20.33 @ $188.04 | = $ 3,822.85 |

**YEARLY SUBTOTAL**     **$80,044.40**

## 2002

### DONALD DRISCOLL

| | | |
|---|---|---|
| Enforcement | 172.64 (29% of 595.3) - 20% (34.53) = 138.11 @ $196.13 | = $27,087.51 |
| Admin. | 422.66 (71% of 595.3) - 20% (84.53) = 342.56 @ $147.10 | = $50,390.58 |

### THOMAS HENDERSON

| | | |
|---|---|---|
| Enforcement | 3.81 - 20% (.76) = 3.05 @ $196.13 | = $ 598.20 |

### JULIE NEPVUE

| | | |
|---|---|---|
| Enforcement | 5.26 (19% of 27.7) - 20% (1.05) = 4.21 @ $ 196.13 | = $ 825.71 |
| Admin. | 22.44 (81% of 27.7) - 20% (4.49) = 17.95 @ $147.10 | = $ 2,640.45 |

### MATTHEW CLASH-DREXLER

| | | |
|---|---|---|
| Enforcement | 42.57 - 20% (8.5) = 34.07 @ $196.13 | = $ 6,682.15 |

**YEARLY SUBTOTAL**     **$88,224.60**

- 23 -

**2003**
DONALD DRISCOLL
Enforcement   100.6 (29% of 346.9) - 20% (20.12) = 80.48 @ $205.94     = $16,574.05
Admin.        246.3 (71% of 346.9) - 20% (49.26) = 197.04 @ $154.45    = $30,432.83

THOMAS HENDERSON
Enforcement        .3 - 20% (.06) = .24 @ $205.94                      = $      49.43

JONATHON HOOKS
Enforcement        5.0 - 20% (1.0) = 4.0 @ $ 205.94                    = $    823.76

                            YEARLY SUBTOTAL                            $47,880.07

**2004**
DONALD DRISCOLL
Enforcement   206.57 (29% of 712.3) - 20% (41.31) = 165.26 @ $216.85   = $35,836.63
Admin.        505.73 (71% of 712.3) - 20% (101.15) = 404.58 @ $162.64  = $65,800.89

THOMAS HENDERSON
Enforcement        .26 - 20% (.05) = .21 @ $205.94                     = $      43.25

JONATHON HOOKS
Enforcement        29.00 - 20% (5.8) = 23.2 @ $216.85                  = $ 5,030.92

                            YEARLY SUBTOTAL                            $106,711.69

**2005**
DONALD DRISCOLL
Enforcement   14.91 (29% of 51.4) - 20% (2.98) = 11.93  @ $216.85      = $ 2,587.02
Admin.        36.49 (71% of 51.4) - 20% (7.30) = 29.19  @ $162.64      = $ 4,747.46

                            YEARLY SUBTOTAL                            $    7,334.48
                YEARLY SUBTOTALS:

                   1999    -      $ 79,083.97

                   2000    -      $ 92,225.84

                   2001    -      $ 80,044.40

                   2002    -      $ 88,224.60

                   2003    -      $ 47,880.07

                   2004    -      $106,711.69

                   2005    -      $  7,334.48


                            TOTAL FEES                                 $501,505.05

          COSTS: $2,776.47

                            TOTAL COSTS                                $ 2,776.47

                            TOTAL AWARD                                $504,281.52

AO 72A
(Rev.8/82)

An appropriate order will follow.

Gustave Diamond
United States District Judge

Date: September 29, 2005

cc:  Donald Driscoll, Esq.
     Community Justice Project
     1705 Allegheny Building
     429 Forbes Avenue
     Pittsburgh, PA 15219-1659

     Lisa A. Olson
     U.S. Department of Justice
     Attorneys - Civil Division
     20 Mass. Ave., N.W., Room 6118
     Washington, D.C.  20530

     Thomas J. Henderson, Esq.
     Julie Nepvue, Esq.
     Lawyers Committee for Civil Rights
     1401 New York Avenue, NW
     Suite 400
     Washington, D.C.  20005
     Raymond N. Baum, Esq.
     John Hansberry, Esq.
     Pepper Hamilton
     50th Fl., One Mellon Bank Center
     500 Grant Street
     Pittsburgh, PA 15219-2502

     J. Deron Gabriel
     Assistant County Solicitor
     Allegheny County Department of Law
     300 Fort Pitt Commons Building
     445 Fort Pitt Boulevard
     Pittsburgh, PA 15219

     Clare Harrigan, Esquire
     Office of General Counsel
     U.S. Department of Housing and Urban Development
     451 Seventh Street, S.W., Room 10258
     Washington, D.C.  20410

- 25 -

Irving Firman, Esq.
Redevelopment Authority of Allegheny County
Tucker Arensberg
1500 One PPG Place
Pittsburgh, PA 15219

Mark Hornak, Esq.
Buchanan Ingersoll PC
20th Floor, One Oxford Center
301 Grant Street
Pittsburgh, PA 15219

AO 72A
(Rev.8/82)